### STANDARD OIL CO. v. PARRISH.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1906.)

#### No. 1,213.

1. NEGLIGENCE—SALE OF DANGEROUS ARTICLE—LIABILITY FOR INJURY TO THIRD PERSONS.

A retailer of illuminating oil must be held to contemplate that it will be used in the ordinary and usual lamps in the households of purchasers, and where the oil sold is not of the quality called for, but is unfit and dangerous for such purpose, the seller is liable for an injury resulting from such ordinary use to a member of the purchaser's family.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, § 25.

Liabilities of venders of injurious substances for injuries to persons other than immediate vendees, see note to Standard Oil Co. v. Murray, 57 C. C. A. 5.]

2. SAME—ACTION—EVIDENCE AS TO EXPLOSION OF LAMP.

Plaintiff's intestate, a child 10 years old, was alone in a room, when her clothing took fire and she was fatally burned. The pieces of a kerosene lamp which had stood upon a table were found upon the floor, within a circle about three feet in diameter, and the carpet within such circle and the tablecloth were in flames. Such pieces and the burner were introduced in evidence. It was also shown that the oil with which the lamp was filled contained a dangerous admixture of gasoline. *Held* that, the physical exhibits not being brought up, the reviewing court cannot say that there was a failure of evidence to support a finding that the death of the child was caused by the explosion of the lamp due to the dangerous character of the oil.

3. EVIDENCE—COMPETENCY—METHOD OF CONDUCTING BUSINESS.

Where the evidence was conflicting upon the issue whether or not kerosene oil sold by defendant contained a dangerous proportion of gasoline, evidence to show a general custom on the part of defendant's employés to use the same buckets indiscriminately in drawing kerosene and gasoline was competent and properly admitted.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 248, 251.]

In Error to the Circuit Court of the United States for the Southern District of Illinois.

At Decatur, Ill., on March 7, 1904, the deceased, a child 10 years old, was burned so severely that within a few days she died. The declaration was in three counts. The first charged that defendant (plaintiff in error) negligently sold to William A. Parrish, father of Jessie, for illuminating purposes five gallons of coal oil which was below the standard of ignition at

150° Fahrenheit, fixed by chapter 104 of the Illinois Revised Statutes of 1881, whereby the oil exploded a lamp in Parrish's home, with the fatal result. The second, in addition to these facts, alleged that defendant sold the oil without having it officially inspected, as required by sections 3 and 4 of chapter 104. That defendant sold to Parrish oil which was not reasonably safe for use in lamps was the basis of the third. The trial resulted in a verdict and judgment for plaintiff. The assignments of error present these questions: Was care owing by defendant to deceased? Did the evidence, without conflict, establish that Parrish was contributorily negligent in using dangerous oil? If so, was his negligence imputable to deceased? Was there evidence sufficient to warrant the jury in finding that defendant's sale of dangerous oil was the proximate cause of the injury? Was error committed in permitting plaintiff's witnesses to answer certain questions?

C. C. Le Forgee, for plaintiff in error.

Isaac A. Buckingham, for defendant in error.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge, delivered the opinion.

1. Parrish asked for illuminating oil of the standard quality. Defendant sold him oil which contained gasoline to such an extent that the mixture was liable to explode the ordinary lamp. Invoking the general rule that a manufacturer or vender is not liable to persons who have no contractual relations with him, defendant contends that for its negligent act it was answerable only to Parrish, the purchaser. But defendant was supplying the oil for illumination, and must have contemplated that it would be burned in the ordinary and usual lamps in the households of the purchasers. Further, the case comes, not under the general rule, but under the well-established exception that one must not knowingly send out an instrumentality which is imminently dangerous without notice of its nature and qualities. Wellington v. Oil Co., 104 Mass. 64; Huset v. J. I. Case Threshing Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303, and cases there collated.

2. The record falls so far short from establishing affirmatively and without conflict any negligence on Parrish's part, that the jury were justified by ample evidence in finding that prior to the accident Parrish was not chargeable with actual or constructive notice of the dangerous nature of what he bought for standard illuminating oil; so the question of imputed negligence is not involved.

3. Between February 22d, when the oil was purchased, and March 7th, when the accident occurred, the lamp in which this oil was burned flickered and spluttered. Parrish and his wife thought the burner was at fault. After cleaning the old burner was found unavailing, two new ones were bought during the interval. The last one was procured on the day of the accident. It had no air vent, but the record fails to show that it was not a standard burner, current on the market. Deceased was alone in the kitchen. No witness establishes directly either that the lamp exploded, or that it was overturned from the table and broken by the fall. No witness testifies to the sound of an explosion or of a crash upon the floor. The only witness in position to testify as to either sound was a 16 year old sister, who was in an adjoining room. She did not recall either sound, but was

startled from her studies by her mother's scream that Jessie was in flames. Testimony of witnesses who were first in the kitchen after it was afire establishes that the room was smoky; that the carpet at the side of the table was aflame in a spot about three feet in diameter; that the tablecloth at that side was burning; that there was no fire in other parts of the room; and that the fragments of a glass lamp were in and about the circle of burning carpet. Defendant argues most earnestly that, from the fact of the dangerous mixture in the lamp and from the circumstances at and immediately after the time of the fire, the jury were not warranted in finding that the mixture exploded the lamp. Were we otherwise constrained to this view, the bill of exceptions presents a matter occurring at the trial which makes it impossible to say that the jury and the judge who heard the case and overruled the motion for a new trial were in error. The various burners and the fragments of the glass lamp were introduced in evidence, and submitted to the inspection of the court and jury. Defendant's argument that an explosion would be evidenced by the dispersion of glass and flaming oil to all parts of the room may be overborne by the physical exhibits which are not before us, and which may establish that an explosion is a tenable and reasonable inference of fact. The force of the confined vapor from the dangerous mixture would be uniform in all directions. Uniform dispersion implies uniform resistance. If in the upper part of the lamp bowl, above the surface of the oil, the weakest spot was found, the effects testified to by the witnesses may have been the natural result of an explosion, a result that was probable by reason of the dangerous contents of the lamp.

4. On the exceptions to the court's rulings in permitting certain questions to be answered, an argument is built up that error was committed in allowing particular instances of similar negligence to go to the jury. But the record does not fit the argument. Plaintiff introduced evidence to prove that the oil remaining in his can was in the same condition after the accident as at the time of the purchase. Tests subsequent to the accident established that the oil contained a dangerous proportion of gasoline. Defendant introduced evidence to show that the oil sold to Parrish was pure. Plaintiff's contention would be strengthened by proof of a general custom or method on the part of defendant's employés which would account for the admixture of gasoline. That such proof was given in anticipation of the defense was not erroneous. The questions objected to were of the following character: "Tell the jury what their method was in the yard there as to drawing oil?" Counsel for defendant: "We object, unless it relates to the drawing of the oil in controversy." The question did not call for prior specific acts of negligence. Defendant did not object to proof of the method employed in the yard, and the answers, showing an indiscriminate use of the same buckets in drawing oil and gasoline, were responsive to the inquiry in regard to the custom at the Decatur yard.

The judgment is affirmed.